# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## CASE NO. 6:22-cv-00849-CEM-DAB

SHANNON HOOPER, individually
and on behalf of all other similarly situated,

       Plaintiff,                              **CLASS ACTION**

       v.

JERRY INSURANCE AGENCY, INC.

       Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO COMPEL ARBITRATION

Plaintiff Shannon Hooper hereby responds in opposition to Defendant Jerry Insurance Agency, Inc.'s Motion to Compel Arbitration ("Mot." or "Motion"), [DE 13], and states:

## I.    INTRODUCTION

On its website, Defendant represents that **"Jerry won't spam you with unwanted calls."** *See* Shah Decl., [DE 13-1], at Ex. A (emphasis supplied). That claim turned out to be false, and after acquiring Plaintiff's contact information – and after being notified by Plaintiff that she was not interested in Defendant's services – Defendant spammed Plaintiff's cellular telephone with daily text messages over the course of two weeks. *See* First Amd. Compl., [DE 1], at ¶¶14, 15. Unable to defend this case on the merits, Defendant seeks to force Plaintiff into individual arbitration. For the reasons discussed below, this Court should deny Defendant's efforts to deprive Plaintiff and the class members of their day in court.

## II.    ARGUMENT

### A. <u>This Court, not an Arbitrator, Should Decide Whether an Agreement Exists</u>.

Preliminarily, and contrary to Defendant's contention, it is this Court that determines whether an agreement exists between the parties that would entitle Defendant to enforce its arbitration provision. *Calderon v. Sixt Rent a Car, LLC*, No. 19-62408-CIV, 2021 U.S. Dist. LEXIS 70589, at *13 (S.D. Fla. Apr. 8, 2021) ("[T]he Court agrees with Charnis that it must determine the question of contract formation

before reaching the delegation clause in the arbitration provision.") (collecting cases); *Bell v. Royal Seas Cruises, Inc.*, No. 19-cv-60752, 2020 U.S. Dist. LEXIS 85273, at *10 (S.D. Fla. May 13, 2020) ("Defendant incorrectly argues that this delegation clause requires that the arbitrator, not the Court, determine whether an agreement was made in the first instance."), *report and recommendation adopted*, No. 19-cv-60752, 2020 U.S. Dist. LEXIS 172255, 2020 WL 5639947, at *1 (S.D. Fla. Sept. 21, 2020); *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB, 2020 U.S. Dist. LEXIS 86339, at *8 (W.D. Mo. Apr. 10, 2020) ("Courts must play a threshold role in determining 'whether the parties have submitted a particular dispute to arbitration.'") (quoting *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 970 (8th Cir. 2017)); *McFadden v. Van Chevrolet-Cadillac, LLC*, No. 18-00395-CV-W-BP, 2018 U.S. Dist. LEXIS 130554, at *11 (W.D. Mo. Aug. 3, 2018) ("Before reaching the delegation clause, however, this Court must first find that the parties entered into a valid contract.") (collecting cases).

As discussed below, this Court should hold that no agreement exists between the parties.

**B. <u>California Law Applies to the Issue of Contract Formation</u>**.

Defendant's second error is the assumption that Florida law applies to this Court's analysis with respect to whether a contract was formed between the parties. *See* Mot. at 14-18 (citing Florida law). Defendant's Terms of Use, however, provide that California law governs irrespective of any choice of law principles. *See* Shah Decl. at Ex. B, B-10 ("Applicable law. By accessing or using the Jerry Services, you agree

that the Federal Arbitration Act, applicable federal law, and the laws of the State of California, without giving effect to any choice of laws principles that would require the application of the laws of a different country or state, will govern these Terms of Use and any dispute of any sort that might arise between you and Jerry.").

"Under Florida's choice-of-law rules, *lex loci contractus* applies in contract matters[.]" *Allen v. Hartford Fire Ins. Co.*, No. 6:16-cv-1603-Orl-37KRS, 2017 U.S. Dist. LEXIS 136503, at *6 (M.D. Fla. Aug. 25, 2017) (Dalton, J.) (quoting *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092 (11th Cir. 2004)). "However, 'under Florida law, courts will enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy.'" *Allen*, 2017 U.S. Dist. LEXIS 136503, at *6 (quoting *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000))).

Accordingly, a choice-of-law clause in a contract applies in determining which state law governs the question of contract formation. *See Van Vechten v. Elenson*, No. 12-80668-Civ-SCOLA, 2013 U.S. Dist. LEXIS 100604, at *3 (S.D. Fla. July 17, 2013) ("While the Media Defendants cite to Florida law on the enforcement of arbitration agreements, the Court cannot be sure that Florida law applies here without the agreement in hand. Many, if not most, contracts of this sort contain a choice-of-law clause setting forth what state's law shall govern the interpretation of its terms, and such choice-of-law clauses are usually enforced and followed.") (citing *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013) ("courts 'enforce

3

choice-of-law provisions unless the law of the chosen forum contravenes strong public policy'"); *Citibank N.A. v. Nat'l Arbitration Council, Inc.*, Nos. 3:04-cv-1076-J-32MCR, 3:04-cv-1205-J-20MCR, 2006 U.S. Dist. LEXIS 67133, at *13 (M.D. Fla. Sep. 19, 2006) (Corrigan, J.) ("'in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contract'.... The Citibank Card Agreement contains a choice of law provision which provides that the agreement is governed by federal law and the law of South Dakota.... Under South Dakota law..."); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1220 (M.D. Fla. 2013) ("The dispute lies in Plaintiff's stated belief that he did not enter into a contract with Defendant. Because the asserted formation of the contract between Mr. Owings and T-Mobile occurred in Florida, and there is no choice of law provision to the contrary, the substantive law governing Florida contract controls this issue."); *see also Cobble v. 20/20 Communs., Inc.*, No. 2:17-CV-53-TAV-MCLC, 2018 U.S. Dist. LEXIS 29298, at *23 (E.D. Tenn. Feb. 23, 2018) ("Indeed, a recent Sixth Circuit decision suggests that, in determining the proper source of law for an issue of contract formation, a choice of law clause within the alleged contract is the starting point.") (citing *Masco Cabinetry Middlefield, LLC v. Cefla N. Am., Inc.*, 637 F. App'x 192, 197 (6th Cir. 2015) (applying Michigan law, as specified in a choice of law provision, in determining whether a contract was formed between various parties in the first place)); *Pritchard v. Dent Wizard Int'l Corp.*, 275 F. Supp. 2d 903, 915 (S.D. Ohio 2003) ("The parties do not argue that the choice-of-law clause in the Secrecy Agreement, which requires Florida law to govern, is invalid. Therefore, in determining whether the

4

arbitration clause in the Secrecy Agreement is enforceable, the Court will follow the FAA for issues related to interpreting the arbitration clause specifically, and Florida contract law for issues related to general contract formation and validity."); *Pacanowski v. Alltran Fin.*, LP, 271 F. Supp. 3d 738, 743 (M.D. Pa. 2017) ("The Card Agreement in dispute contains a choice-of-law provision, which states that 'Federal law and the law of South Dakota, where we [Citibank] are located, govern the terms and enforcement of this Agreement.'….Therefore, South Dakota state law principles of contract formation apply here."); *Kaz Co. v. Esselte Corp.*, No. 5:05CV814, 2005 U.S. Dist. LEXIS 28299, at *4 (N.D. Ohio Nov. 17, 2005) ("Courts apply state-law principles that govern formation of contract to determine whether the agreement is void. *Id.* In this case, the contracts signed by the parties include a forum selection clause designating New York as the law that shall govern construction of the contracts.").

Accordingly, this Court should apply California law to the issue of contract formation. As discussed below, California law provides that no agreement exists between the parties.

C. **No Agreement Exists Under California Law**.

Under California law, this Court should conclude that no agreement exists between the parties. Specifically, in *Berman v. Freedom Fin. Network, LLC*, the Ninth Circuit recently applied California law to affirm denial of a motion to compel arbitration that, like Defendant's Motion here, sought to enforce an arbitration

5

provision buried in lengthy terms presented to the plaintiff via a hyperlink. 30 F.4th 849, 853 (U.S. 9th Cir. 2022) ("Plaintiffs did not unambiguously manifest their assent to the terms and conditions when navigating through the websites, and as a result they never entered into a binding agreement to arbitrate their dispute. We therefore affirm the district court's order denying defendants' motion to compel arbitration.").

At issue in that case was a disclosure more conspicuous than the one here:



*Id.* at Appendix B.

In determining that the website did not alert consumers to the existence of an arbitration provision, and therefore did not serve to bind them to any such provision, the Ninth Circuit held:

> Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print. Because "online providers have complete control over the design of their websites," *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1, 16 (Ct. App. 2021), "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," *Nguyen*, 763 F.3d at 1179. The designer of the webpages at issue here did not take that obligation to heart.
>
> Second, while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent. Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists. *See Sellers*, 289 Cal. Rptr. 3d at 29. Because our inquiry notice standard demands conspicuousness tailored to the reasonably prudent Internet user, not to the expert user, the design of the hyperlinks must put such a user on notice of their existence. *Nguyen*, 763 F.3d at 1177, 1179.
>
> A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently "set apart" from the surrounding text. *Sellers*, 289 Cal. Rptr. 3d at 29.

*Id.* at 857.

Further, the Ninth Circuit reasoned that the plaintiffs "did not take any action that unambiguously manifested their assent to be bound by the terms and conditions." *Id.*. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* The Ninth Circuit rejected the argument that the websites' language stating "'I understand and agree to the Terms &

7

Conditions'" was sufficient to manifest assent because "[the websites] did not indicate to the user what action would constitute assent to those terms and conditions. Likewise, the text of the button itself gave no indication that it would bind plaintiffs to a set of terms and conditions." *Id*.

As in *Berman*, "the text disclosing the existence of the terms and conditions on [Defendant's] website[] is the antithesis of conspicuous. It is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye":



*Id*. at 856.

And simply highlighting the Terms of Use hyperlink is insufficient to ensure that it is set apart from the surrounding text. Moreover, like in *Berman*, the "Continue" button on Defendant's website gives no indication that Plaintiff would be bound to

lengthy terms and conditions.  Further, "even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Id.* at 858.

In sum, this Court should hold that the design and content of Defendant's website failed to adequately call to Plaintiff's (or the class members') "attention either the existence of the terms and conditions or the fact that, by clicking on the 'continue' button, [she was] agreeing to be bound by those terms." *Id.*

### D. Even Under Florida law, no Agreement Exists.

Even under Florida, this Court should hold that no agreement exists. Indeed, courts in this District have held, consistent with the reasoning of *Berman*, that "[w]hether a reasonably prudent user is put on inquiry notice turns on the clarity and conspicuousness of [the] terms." *Fridman v. 1-800 Contacts, Inc.*, No. 21-cv-21700-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 152553, at *13 (S.D. Fla. Aug. 12, 2021) (quoting *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1230 (S.D. Fla. 2020) (citations and quotations omitted). "In the context of web-based contracts, clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.* (finding website disclosures did not lead to the formation of a contract, and stating, "the record does not support the conclusion that Plaintiff was on constructive notice of the Website's Terms, which include the arbitration and class action waiver provisions. As such, the Court finds that there is no valid agreement in

this case, which would require that Plaintiff's claims must proceed through arbitration on an individual basis.").

In *Goldstein v. Fandango Media, LLC*, the court denied a motion to compel arbitration based on the following disclosure:



No. 9:21-cv-80466-RAR, 2021 U.S. Dist. LEXIS 139153, at *3 (S.D. Fla. July 27, 2021).

In a thorough and well-reasoned opinion discussing Florida law on the formation of online contracts, the court in *Goldstein*, held that "Fandango's notice is deficient because of its placement on the webpage and because the notice fails to alert the user of the arbitration agreement." *Id*. at *9. The court reasoned that "the inconspicuous appearance and poor placement of Fandango's notice negates its purportedly intended purpose. It is significant that Fandango's notice regarding the binding nature of its Terms and Policies was placed *beneath* the large, orange, all-capitalized, COMPLETE MY PURCHASE click button, rather than above it." *Id*. (citing *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 31-32 (2d Cir. 2002) (C.J. Sotomayor) (finding that a reasonably prudent person may not be aware of a notice of license terms below a download button); *Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1179

(9th Cir. 2014) ("[C]lose proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.")). Defendant's website provides equally deficient notice to a website visitor. Like in *Goldstein*, it is significant that the notice to the hyperlink is below a large "Continue" button, which was intentional so it would not be seen by visitors to the website.

In its Motion, Defendant attempts to compare its deficient disclosures to those at issue in *MetroPCS Commc'ns, Inc. v. Porter*, 273 So.3d 1025 (Fla. 3d DCA 2018). But the cases could not be factually more distinct. In *MetroPCS*, the defendant sent a text message to the plaintiff explicitly advising of the company's terms and condition via a hyperlink in the text. The Third DCA thus concluded that "[i]n marked contrast to the circumstances in *Vitacost.com* and other browsewrap cases, the hyperlink was not buried in pages of information or hidden at the foot of a web page. Here notice that the terms and conditions applied was conspicuous." *Id*. at 1028-29.

In sum, even under a Florida law analysis, no agreement was formed by Plaintiff visiting Defendant's website, and Defendant's effort to equate website with the explicit text message notice at issue in *MetroPCS* is unavailing. This Court should therefore deny the Motion because a reasonable prudent consumer like Plaintiff would not have been placed on notice of Defendant's arbitration provision.

But even if Defendant's arguments were given any consideration, Defendant's Motion should nevertheless be denied because Defendant's website disclosure, in violation of Florida law, fails to specifically incorporate and describe the arbitration provision. In *Goldstein*, part of the court's reasoning for denying the motion to compel

11

arbitration was based on the browsewrap agreement's failure to comply with Florida law with respect to the incorporation of collateral documents. *See* 2021 U.S. Dist. LEXIS 139153, at \*10. Specifically, the court held in pertinent part:

> the language used in Fandango's browsewrap agreement is insufficient to place a reasonable user on notice that completing a purchase represents a waiver of the user's right to file a lawsuit compelling Fandango's appearance in court. In Florida, to incorporate a collateral document into an agreement, the agreement must: (1) specifically provide that the collateral document is being incorporated; and (2) sufficiently describe the collateral document being incorporated….Here, Fandango's Arbitration Agreement is a collateral document, but Fandango's notice does not sufficiently describe it so that the user is on notice of the mandatory arbitration provision, nor does Fandango specifically advise the user that an agreement to arbitrate is being incorporated into its Terms and Policies.

*Id.* (citing *Vitacost.com*, 210 So. 3d at 762) ("Florida law requires the agreement to specifically provide that the collateral document is being incorporated and to sufficiently describe the collateral document to be incorporated….The seller's webpages failed to advise the plaintiff that his purchase was subject to the terms and conditions of the sale and did not put him on inquiry notice of the arbitration provision.") (citing *Herman v. Seaworld Parks & Entertainment, Inc.*, 2016 U.S. Dist. LEXIS 181173, 2016 WL 7447555 (Fla. M.D. Aug. 26, 2016); *BGT Grp., Inc. v. Tradewinds Engine Servs.*, LLC, 62 So.3d 1192, 1194 (Fla. 4th Dist. Ct. App. 2011)).

Like the disclosure in *Goldstein*, Defendant's website, in violation of Florida law, fails to describe or incorporate the arbitration agreement, which is a collateral document. The website makes reference to Defendant's Terms of Use but says nothing about the arbitration clause Defendants seek to enforce. Under Florida law, the failure

12

to specifically describe and incorporate the collateral arbitration agreement means that Plaintiff was never placed on notice of the agreement – notwithstanding any arguments by Defendant regarding the conspicuousness of the disclosures – and, therefore, the arbitration agreement is unenforceable.

    **E.** **Defendant's Arbitration Provision is Also Null and Void Under _McGill_ Because It Deprives Plaintiff of the Right to Seek Public Injunctive Relief in Any Forum**.

        **1.** **_McGill_ _Prohibits Waivers of the Right to Seek Public Injunctive Relief in any Forum._**

Under California law, and more specifically, pursuant to _McGill v. Citibank, N.A._, 2 Cal. 5th 945 (2017), an arbitration provision that prevents a consumer from seeking public injunctive relief in any forum is unenforceable. "Public injunctive relief" is relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." _McGill_, 2 Cal. 5th at 951. The issue before the court in _McGill_ was whether the arbitration provision in question "is valid and enforceable insofar as it purports to waive [plaintiffs'] right to seek public injunctive relief in any forum." _Id._ at 956 (emphasis in original). After finding that the complaint did in fact seek public injunctive relief, the court concluded that the "arbitration provision here at issue is invalid and unenforceable under state law insofar as it purport to waive McGill's statutory right to seek such relief." _Id._ at 958-61. To reach this result, the court relied on Civil Code § 3513, which provides that "a law established for a public reason cannot be contravened by private agreement." _Id._ The court explained

that because the relief sought by the plaintiff in that case was "primarily for the benefit of the general public," any waiver of the right to seek public injunctive relief under those statutes "would seriously compromise the public purposes the statutes were intended to serve." *Id*.

### 2. *Plaintiff Seeks Public Injunctive Relief.*

It cannot be disputed that Plaintiff seeks, and is entitled to, public injunctive relief in this case. *See* First Amd. Compl. at Count III, IV. "Injunctive relief is available under the TCPA....Because the TCPA authorizes such relief, the ordinary requirement that a plaintiff show irreparable injury to obtain an injunction does not apply." *Wang v. Def. Tax Grp. Inc.*, No. CV 20-01193-CJC (MRWx), 2020 U.S. Dist. LEXIS 188219, at *7-8 (C.D. Cal. Oct. 8, 2020) (citing *J2 Global Communications, Inc. v. Blue Jay Inc.*, 2009 U.S. Dist. LEXIS 111564, 2009 WL 4572726 (N.D. Cal. Dec. 1, 2009) (in turn, citing *United States v. Laerdal Mfg. Co.*, 73 F.3d 852, 855 (9th Cir. 1995))); *see also Doyle v. JTT Funding, Inc.,* No. LA CV18-06145 JAK (ASx), 2019 U.S. Dist. LEXIS 234011, at *35-36 (C.D. Cal. Dec. 2, 2019) (stating, *inter alia,* "[i]rreparable injury need not be shown because [TCPA] injunctions are authorized by statute.") (citing *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist. LEXIS 177166, at *10-11 (N.D. Cal. Aug. 19, 2013); *j2 Glob. Communs.*, 2009 U.S. Dist. LEXIS 1616, 2009 WL 4572726, at*8)).

Accordingly, numerous courts have found that TCPA injunctions benefit the public at large, and are not limited to just the individuals that have received violative

calls from defendants.  *See, e.g., Meyer v. Portfolio Recovery Assocs., Ltd. Liab. Co.,* No. 11cv1008 AJB (RBB), 2011 U.S. Dist. LEXIS 156610, at *31 (S.D. Cal. Sep. 14, 2011) (granting preliminary injunction in TCPA case because "there is a strong public interest against abusive and invasive practices by the debt collection industry, and the public interest is best served by the enforcement of these regulations whose primary purpose is to protect consumers."); *Roylance v. ALG Real Estate Servs.*, No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930, at *39 (N.D. Cal. Mar. 16, 2015) ("The court also recommends the [defendant] be permanently enjoined from violating the TCPA, [and] the regulations promulgated under it[.]"); *Lynn v. Monarch Recovery Mgmt.*, No. WDQ-11-2824, 2013 U.S. Dist. LEXIS 41700, at *24 (D. Md. Mar. 22, 2013) ("Count Two seeks a permanent injunction prohibiting [defendant] from violating the TCPA, including through the acts of others. […] 47 U.S.C. § 227(b)(3) authorizes injunctive relief for a violation of the subsection. Further, [plaintiff] has shown that [defendant] violated that subsection's call charged provision, § 227(b)(1)(A)(iii). Injunctive relief is therefore warranted.") (internal citations omitted).

Indeed, the relief requested by Plaintiff here is similar to the relief requested in *McGill*, which the California Supreme Court found to be public injunctive relief.  *See McGill,* 393 P.3d at 90-92; *see also Hodges v. Comcast Cable Commc'ns, LLC*, 12 F.4th 1108, 1115 (9th Cir. 2021) ("The paradigmatic example [of public injunctive relief] would be the sort of injunctive relief sought in *McGill* itself, where the plaintiff sought an injunction against the use of false advertising to promote a credit protection plan.")

15

As the Ninth Circuit held in *Blair*, an injunction that seeks the elimination of practices that harm the general public is, by definition, "public injunctive relief." *Id*. at 928 F.3d at 824.

Moreover, relief benefitting a subset of the public is still public injunctive relief, and courts have rejected arguments to the contrary. For example, in *Eiess v. USAA Fed. Sav. Bank*, the court rejected an argument by the defendant claiming that the injunction sought would not benefit the public because only a subset of the population would benefit from such relief:

> USAA attempts to argue that the remedy of public injunctive relief is inapplicable in the instant case because its services are offered to a subset of the general public – those who have served in the military or are related to servicemembers who qualify for USAA's services – and therefore any injunctive relief could never be for the benefit of the general "public." USAA cites to no California court decision holding that, if all members of the public are not potentially affected, then the injunction is not "public." Indeed, such a position would seem untenable; for example, simply because relief in a given case were designed to protect a subset of the general public – such as children, the elderly, women, or non-English speakers – such relief would hardly be deemed "nonpublic" in nature. Moreover, USAA's argument provides no guiding principle for a court to decide when a group of potentially affected individuals is sufficiently small to preclude "public" injunctive relief.

404 F. Supp. 3d 1240, 1258-59 (N.D. Cal. 2019). The Ninth Circuit agreed with the *Eiess* court's logic in *Snarr v. HRB Tax Grp., Inc.*, rejecting the defendant's argument that because the consumers who would benefit from the injunctive relief must qualify for the IRS free-filing services, the relief sought was "private". 839 F. App'x 53 (9th Cir. 2020).

In rejecting the argument, the Ninth Circuit cited *Eiess* with approval, noting "[n]o California authority supports construing the beneficiaries of this type of injunctive relief so narrowly." *Snarr*, 839 Fed. Appx. at 55. Indeed, the weight of legal authority is in accord that allegations like Plaintiff's sufficiently create a request for public injunctive relief. *See, e.g., Blair*, 928 F.3d at 831 n.3 (holding plaintiff seeks public injunctive relief where she seeks "to enjoin future violations of California's consumer protection statutes"); *Mejia*, 2020 WL 5525793, at *7 (plaintiff sought public injunctive relief where his prayer sought an injunction forcing defendant to cease selling motor vehicles in the state of California without first providing the consumer with disclosures mandated by the Civil Code in a single document because he does not limit relief "for class members or some other small group of individuals; it encompasses 'consumers' generally"); *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710, 722 (Cal. Ct. App. 2021) (plaintiff sought public injunctive relief in case challenging terms of a loan because "it is enough that the requested relief has the purpose and effect of protecting the public from Lender's ongoing harm."); *McArdle*, 772 F. App'x 575 (affirming district court's finding that a plaintiff was pursuing public injunctive relief where the plaintiff was seeking to enjoin AT&T from "charg[ing] exorbitant fees for international cellular telephone service").

### 3. *Defendant's Arbitration Provision is Null and Void Under* <u>McGill</u>.

Combined with the requirement that "all claims" are subject to binding arbitration, the arbitration provision Defendant seeks to enforce violates *McGill*

17

because it waives Plaintiff's right to seek public injunctive relief in any forum. Specifically, Defendant's arbitration agreement provides that all claims will be decided in arbitration and "**will be conducted only on an individual basis and not in a class, consolidated or representative action.**" Mot. at 6 (emphasis original).

Courts have concluded that similar arbitration provisions that bar "representative" actions and that limit the plaintiff's right to relief to only individual recovery are unenforceable. *See, e.g.*, *Vasquez v. Cebridge Telecom CA, LLC*, No. 21-cv-06400-EMC, 2021 U.S. Dist. LEXIS 212824, at *18 (N.D. Cal. Nov. 3, 2021) ("The 'Binding Arbitration' and 'Waiver of Class and Representative Actions' provisions of Suddenlink's RSA are unenforceable as to any claim for public injunction under *McGill* (and confirmed in *Blair)* because they eliminate Plaintiff's right to seek a public injunction in any forum….RSA §§ 24 ('This agreement to arbitrate is intended to be broadly interpreted. It includes . . . [c]laims arising out of or relating to any aspect of the relationship between us'), 24(g) ('YOU AGREE TO ARBITRATE YOUR DISPUTE AND TO DO SO ON AN INDIVIDUAL BASIS; CLASS, REPRESENTATIVE, AND PRIVATE ATTORNEY GENERAL ARBITRATIONS AND ACTIONS ARE NOT PERMITTED. . . [N]either You nor Suddenlink may seek, nor may the arbitrator award, non-individualized relief that would affect other account holders.'"); *McArdle*, 2017 WL 4354998, at * 1 (arbitration clause prohibited public injunctive relief where it limited the arbitrator to awarding relief "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual

18

claim"); aff'd in 772 Fed. Appx. 575 (9th Cir. 2019); *Maldonado*, 60 Cal. App. 5th at 722 (arbitration agreement which provided the consumer had no right to participate in or join "a class action, private attorney general action, or other representative action" violated *McGill* and was unenforceable); *Cottrell v. AT&T, Inc.*, No. 19-cv-07672-JCS, 2020 WL 2747774, at *5 (N.D. Cal. May 27, 2020) (arbitration provision with class waiver that limits arbitrator to awarding relief "only in favor of the individual party seeking relief" prevented an award of public injunctive relief in violation of *McGill*); *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904 (N.D. Cal. 2020) (Agreement which "waive[d] the plaintiffs' right to pursue class, collective, or representative claims and further provides that the arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's claims" prohibited public injunctions and was therefore unenforceable); *Olosoni v. HRB Tax Group, Inc.*, No. 19-cv-3610-SK, 2019 WL 7576680, at *3 (N.D. Cal. Nov. 5, 2019) (finding arbitration provision that waives representative claims to be unenforceable); *Mejia*, 2020 WL 5525793 at * 7-9 (affirming that arbitration clause prohibited public injunctive relief where it barred arbitration on "a class, representative, or collective basis (including as private attorney general on behalf of others)" and also explicitly barred the arbitrator from making "an award for the benefit of …anyone other than a named party").

In sum, because Defendant's arbitration provision compels all claims to arbitration, yet only allows Plaintiff to pursue relief individually in that forum, the clause at issue bars Plaintiff's right to seek public injunctive relief in any forum and

therefore violates *McGill*. Accordingly, this Court should deny Defendant's Motion as the arbitration it seeks to enforce is null and void under governing California law.

## F. <u>The Class Action Waiver is Similarly Unenforceable</u>.

Lastly, this Court should reject Defendant's class action waiver arguments for the same reasons that it should deny arbitration. *See Fridman*, 554 F. Supp. 3d at 1260 (denying motion to compel arbitration and enforcement of a class waiver contained in a browsewrap agreement); *Starke v. Squaretrade, Inc.*, 913 F.3d 279, 297 (2d Cir. 2019) (affirming district court's "refusal to assess the scope of the arbitration provision or the validity of the class action waiver" based on a finding "that there was no enforceable agreement to arbitrate[.]"); *Zachman v. Hudson*, No. 20 CV 1579 (VB), 2021 U.S. Dist. LEXIS 53322, at *19 (S.D.N.Y. Mar. 22, 2021) ("Accordingly, defendant has failed to establish that plaintiff was put on inquiry notice of the mandatory arbitration or class action waiver provisions based on defendant's publication of the revised Account Agreement to the HVCU website.").

**WHEREFORE**, Plaintiff respectfully request an Order denying Defendant's Motion.

Date: June 30, 2022

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com